IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
DEMARCUS M.,                    )
                                )
          Plaintiff,            )
                                )
     v.                         )     1:22-cv-1054
                                )
MARTIN J. O'MALLEY,[1]          )
Commissioner of Social          )
Security,                       )
                                )
          Defendant.            )
```

## MEMORANDUM OPINION AND ORDER

Plaintiff, Demarcus M., brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Doc. 1.) The court has before it the certified administrative record, (Doc. 4 (cited herein as "Tr. __")), as

---

[1] On December 20, 2023, President Joseph R. Biden, Jr., appointed Martin J. O'Malley as Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should substitute for Kilolo Kijakazi as Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

well as the parties' dispositive briefs, (Docs. 8, 9). For the reasons that follow, the court will enter judgment for the Commissioner.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI (Tr. 227-37), alleging a disability onset date of December 31, 2014 (see Tr. 228, 232). Upon denial of those applications initially (Tr. 75-101, 119-26) and on reconsideration (Tr. 102-18, 135-42), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 143-44). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 39-74.) The ALJ subsequently ruled Plaintiff not disabled under the Act. (Tr. 12-37.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 224-26), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through March 31, 2018.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since December 31, 2014, the alleged onset date.
>
> . . .
>
> 3. [Plaintiff] has the following severe impairments: degenerative disc disease (DDD) of the cervical spine status-post anterior cervical discectomy and fusion

- 2 -

(ACDF); DDD lumbar spine status-post laminectomy; hypertension (HTN); obesity; and obstructive sleep apnea (OSA).

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform sedentary work . . ., except while he can sit for six hours, he must be able to alternate position to standing for five minutes after every 30 min[ute]s of sitting. He can occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; and can occasionally balance, stoop, kneel, crouch, and crawl. He must avoid concentrated exposure to unprotected heights and moving mechanical parts.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the . . . Act, from December 31, 2014, through the date of this decision.

(Tr. 18-32 (bold font, internal parenthetical citations, and footnote omitted).)

## II. STANDARD OF REVIEW

In cases such as this one, where the matter was previously adjudicated by an ALJ, review of the ALJ's ruling is limited to the following two issues: (1) whether substantial evidence supports the ALJ's decision; and (2) whether the ALJ applied the correct legal standards. See 42 U.S.C. § 405(g); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The question is not whether Plaintiff is disabled, but whether the ALJ's finding that Plaintiff is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. See Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). If a reasonable mind might accept as adequate the evidence in support of the ALJ's decision, the court should not reweigh the evidence or substitute its judgment for that of the ALJ. Hays, 907 F.2d at 1456.

"To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). "These regulations establish a

'sequential evaluation process' [('SEP')] to determine whether a claimant is disabled." Id. (internal citations omitted). The SEP has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999). "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter v.

Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (internal citations omitted).[2]

### III. DISCUSSION

Plaintiff contends that the court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ violated Radford[v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013),] in failing to adequately analyze Listing 1.16 for lumbar spinal stenosis," (Doc. 8 at 4);

2) "[t]he ALJ erred by failing to account for Plaintiff's walker usage in the RFC," (id. at 8); and

3) "[t]he ALJ erred in failing to address Plaintiff's need to lie down during the day to relieve pain in the RFC," (id. at 9).

---

[2] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines v. Barnhart, 453 F.3d 559, 562 (4th Cir. 2006) (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

The Commissioner contends otherwise and seeks affirmance of the ALJ's decision. (Doc. 9 at 4-17.)

**A. Listing 1.16**

In Plaintiff's first issue on review, he asserts that "[t]he ALJ violated Radford in failing to adequately analyze Listing 1.16 for lumbar spinal stenosis." (Doc. 8 at 4.) More specifically, Plaintiff maintains that, "[a]t Step Three of the [sequential evaluation process], the ALJ merely summarized the criteria of Listing 1.16 and stated that it was not met without engaging in any analysis of the facts of the case," which "is not permissible" under Radford. (Id. at 5 (referencing Tr. 20-21); see also id. at 5-6 (quoting Radford, 734 F.3d at 295 (holding that ALJ's insufficient listing analysis "ma[de] it impossible for a reviewing court to evaluate whether substantial evidence support[ed] the ALJ's findings")).) According to Plaintiff, "all of the criteria of Listing 1.16 were present in the record and in a four-month period as the listing preamble requires" (id. at 7 (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.00C(7)(c))), and "'the medical evidence related to Plaintiff's [] condition is not so one-sided that one could clearly decide, without analysis, that [the] Listing [] is not implicated'" (id. at 8 (quoting Dial v. Colvin, No. 1:16CV70, 2016 WL 6997502, at *6 (M.D.N.C. Nov. 30, 2016) (unpublished),

- 7 -

recommendation adopted, slip op. (M.D.N.C. Dec. 29, 2016))). Plaintiff's contentions do not warrant relief.

"Under Step 3 [of the SEP], the [applicable] regulation states that a claimant will be found disabled if he or she has an impairment that 'meets or equals one of [the] listings in [A]ppendix 1 of [20 C.F.R. Part 404, Subpart P] and meets the duration requirement.'" Radford, 734 F.3d at 293 (quoting 20 C.F.R. § 404.1520(a)(4)(iii)) (internal bracketed numbers omitted). "The listings . . . are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990) (internal footnote and parentheticals omitted). "In order to satisfy a listing and qualify for benefits, a person must meet all of the medical criteria in a particular listing." Bennett v. Sullivan, 917 F.2d 157, 160 (4th Cir. 1990) (citing Zebley, 493 U.S. at 530, and 20 C.F.R. § 404.1526(a)); see also Zebley, 493 U.S. at 530 ("An impairment that manifests only some of th[e] criteria [in a listing], no matter how severely, does not qualify."). "[A]n ALJ . . . must provide sufficient explanation and analysis to allow meaningful judicial review of his step three determination where the 'medical record

- 8 -

includes a fair amount of evidence' that a claimant's impairment meets a disability listing." Ollice v. Colvin, No. 1:15CV927, 2016 WL 7046807, at *3 (M.D.N.C. Dec. 2, 2016) (unpublished) (emphasis added) (quoting Radford, 734 F.3d at 295), recommendation adopted, slip op. (M.D.N.C. Jan. 10, 2017).

In order to meet the requirements of Listing 1.16, Plaintiff must show evidence of the following:

    A.    Symptom(s) of neurological compromise manifested as:

        1.    Nonradicular distribution of pain in one or both lower extremities; or

        2.    Nonradicular distribution of sensory loss in one or both lower extremities; or

        3.    Neurogenic claudication.

AND

    B.    Nonradicular neurological signs present during physical examination or on a diagnostic test and evidenced by 1 and either 2 or 3:

        1.    Muscle weakness.

        2.    Sensory changes evidenced by:

            a.    Decreased sensation; or

            b.    Sensory nerve deficit (abnormal sensory nerve latency) on electrodiagnostic testing; or

            c.    Areflexia, trophic ulceration, or bladder or bowel incontinence.

>       3.  Decreased deep tendon reflexes in one
>       or both lower extremities.
>
>   AND
>
>   C.  Findings on imaging or in an operative report
>   consistent with compromise of the cauda equina with
>   lumbar spinal stenosis.
>
>   AND
>
>   D.  Impairment-related physical limitation of
>   musculoskeletal functioning that has lasted, or is
>   expected to last, for a continuous period of at least
>   12 months, and medical documentation of at least one
>   of the following:
>
>       1.  A documented medical need for a walker,
>       bilateral canes, or bilateral crutches or a
>       wheeled and seated mobility device involving
>       the use of both hands; or
>
>       2.  An inability to use one upper extremity
>       to independently initiate, sustain, and
>       complete work-related activities involving
>       fine and gross movements, and a documented
>       medical need for a one-handed, hand-held
>       assistive device that requires the use of
>       the other upper extremity or a wheeled and
>       seated mobility device involving the use of
>       one hand.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.16 (internal parenthetical citations omitted).

As an initial matter, although Plaintiff correctly observed that the ALJ did not expressly compare the criteria of Listing 1.16 to the record evidence in her step three analysis (see Doc. 8 at 5 (referencing Tr. 20-21)), the court "must read the ALJ's decision as a whole," because "an ALJ's step-three conclusion

that the claimant did not meet the listing at issue can be upheld based on the ALJ's findings at subsequent steps in the analysis," Keene v. Berryhill, 732 F. App'x 174, 177 (4th Cir. 2018) (citing Fischer-Ross v. Barnhart, 431 F.3d 729, 734 (10th Cir. 2005) (deeming "remand for a more thorough discussion of the listings [not required] when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review")). Here, the ALJ noted at the outset of her step three listings analysis that, "[b]ased upon the evidentiary discussion under Finding 5 [regarding Plaintiff's RFC], the [ALJ] finds that [Plaintiff's] impairments, singly or in combination, based upon a review of the medical evidence, do not meet Listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment," and thereafter found that "[t]he record fail[ed] to support [Listing] 1.16." (Tr. 20 (emphasis added).) Because the ALJ expressly incorporated her RFC discussion into her step three analysis, the ALJ's lack of analysis at step three does not, standing alone, require the court to remand the case. Compare Dial, 2016 WL 6997502, at *5 ("[T]he ALJ's decision does not mention or address Listing 4.04 or the underlying requirements for that Listing at all." (emphasis added)).

Although Plaintiff asserts that "all the criteria of Listing 1.16 were present in the record and in a four-month period as the listing preamble requires" (Doc. 8 at 7 (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00C(7)(c))), he has failed to produce evidence meeting the paragraph (D) criteria of Listing 1.16, i.e., "[a] documented medical need for a walker," 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.16D(1). "[D]ocumented medical need for a walker" means "evidence from a medical source that supports [the claimant's] medical need for an assistive device for a continuous period of at least 12 months." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00C(6)(a) (emphasis added). Moreover, that "evidence must describe the circumstances for which [a claimant] need[s] to use the assistive device." Id.

Plaintiff contends that "[h]e was prescribed a front wheeled walker ('FWW') for ambulation due to decreased strength, decreased endurance, impaired balance, and impaired mobility" (id. (citing Tr. 1180)), and that, "at his hearing, [Plaintiff] testified that he was still using the walker" (id. (citing Tr. 62)). Plaintiff further notes that "the ALJ acknowledged th[ose facts] and did not counter [them], noting '[h]e was given [a] walker and bedside commode after his lumbar surgery, which he testified to still using at the hearing.'" (Id. (quoting Tr. 29).) That argument fails for two reasons.

- 12 -

First, the evidence relied on by Plaintiff does not show a "documented medical need for a walker" as required by Listing 1.16D. At most, that evidence shows that a physical therapist at the hospital issued Plaintiff a FWW and a bedside commode, along with restrictions of no bending, lifting, or twisting, <u>the day after his lumbar surgery in connection with his discharge home</u>. (See Tr. 1180, 1481.) Thus, that evidence demonstrates neither that Plaintiff required an FWW "<u>for a continuous period of at least 12 months</u>" nor "the circumstances for which [Plaintiff] need[ed]" the FWW, 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00C(6)(a). Moreover, none of the evidence following Plaintiff's discharge from his lumbar surgery, including physical therapy sessions and follow-ups with his primary care physician and spinal surgeon, reflected that he needed (or even used) a walker. (See Tr. 1160-1206, 1356, 1446-49.)

Second, although the ALJ did not expressly reject Plaintiff's testimony regarding his walker usage, the ALJ did discount the bending/lifting/twisting restrictions issued at the same time as the FWW, noting those restrictions were "temporary in nature and not intended to limit [Plaintiff] for more than a short period, as [they were] offered [] at the time of discharge after lumbar spine surgery" and "d[id] not reflect a complete picture of [Plaintiff]'s functional capacity throughout the

- 13 -

relevant period of alleged disability." (Tr. 29 (citing Tr. 1481).) The ALJ also rejected Plaintiff's testimony that he used a cane prior to his back surgery, noting that such usage "[wa]s not indicated in any medical evidence." (Id.) Consistent with the ALJ's discounting of Plaintiff's discharge restrictions and his alleged cane usage, the ALJ did not include the need to use either a cane or an FWW in the RFC. (See Tr. 22.) Accordingly, the ALJ's decision makes clear that she did not find that Plaintiff's lumbar impairment necessitated an FWW, and, as such, the ALJ did not err in finding that Plaintiff's impairment failed to meet or equal the criteria of Listing 1.16. See Rivera v. Astrue, No. CV-10-0315, 2012 WL 553137, at *4 (E.D. Wash. Feb. 21, 2012) (unpublished) (upholding ALJ's finding the plaintiff's impairment did not meet spinal listing where "the need for a walker w[as] observed or reported . . . immediately after surgery," and "[t]here [wa]s no indication symptoms of this severity persisted").

In sum, Plaintiff's first issue on review fails to entitle him to relief.

**B. Need for a Walker**

In Plaintiff's second assignment of error, he alleges that "[t]he ALJ erred by failing to account for Plaintiff's walker usage in the RFC." (Doc. 8 at 8.) Plaintiff reiterates "that he

- 14 -

was prescribed a walker after his lumbar surgery which he [testified that] he still used." (Id. at 9 (citing Tr. 62).) The court's finding in connection with Plaintiff's first assignment of error that the ALJ did not err by finding that Plaintiff's lumbar impairments failed to meet Listing 1.16, because Plaintiff did not show "a documented medical need for a walker," 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.16D(1), also forecloses relief on this issue on review.

**C.  Need to Lie Down**

Finally, Plaintiff argues that "[t]he ALJ erred in failing to address Plaintiff's need to lie down during the day to relieve pain in the RFC." (Doc. 8 at 9.) In particular, Plaintiff notes that the ALJ acknowledged Plaintiff's testimony "that he spent most of his time sitting propped up in his recliner or bed and laying [sic] down, which was definitely his most comfortable position" (id. at 9-10 (citing Tr. 22-23, 63)), as well as that Plaintiff "'reported only moderate pain relief with injections and pain medication'" (id. at 10 (quoting Tr. 29)). Plaintiff additionally points out that the ALJ asked the VE whether a person needing to take at least one break per workday for up to an hour to lie down could be accommodated in competitive employment, and that the VE responded in the negative. (Id. (citing Tr. 69).)  According to Plaintiff,

- 15 -

"[d]espite its outcome determinative importance, the ALJ did not explain why she did not include such an accommodation in the RFC" (id.), and "[w]here an ALJ's 'analysis is incomplete and precludes meaningful review,' remand is appropriate" (id. at 11 (quoting Monroe v. Colvin, 826 F.3d 176, 191 (4th Cir. 2016)).) Plaintiff's argument provides no basis for relief.

To begin, the ALJ's evaluation of Plaintiff's subjective symptom reporting helps to explain the ALJ's omission of a need to lie down in the RFC. In that regard, the ALJ acknowledged Plaintiff's testimony "that most days, he sits in a recliner or in the bed, sitting up against the headboard," and that "laying [sic] down is his most comfortable position" (Tr. 22-23 (referencing Tr. 63).) The ALJ thereafter found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that his "statements concerning the intensity, persistence, and limiting effects of th[o]se symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e ALJ's] decision." (Tr. 23.) Notably, Plaintiff did not specifically challenge that analysis by the ALJ. (See Doc. 8.)

In addition, none of Plaintiff's treatment providers opined that Plaintiff's lumbar symptoms required him to lie down during

- 16 -

the day. See Spradley v. Saul, No. 1:20CV337, 2021 WL 1739013, at *12 (M.D.N.C. May 3, 2021) (unpublished) (rejecting the plaintiff's argument that ALJ erred by failing to include breaks to lie down in RFC because the "[p]laintiff cannot (and did not) point to any opinion evidence of record supporting the need for additional breaks to lie down in the RFC"), recommendation adopted, 2021 WL 8322621 (M.D.N.C. June 7, 2021) (unpublished).

The ALJ's discussion of the medical evidence further elucidates her omission of a need to lie down in the RFC. In that regard, the ALJ noted that:

- At a pain management consultation on March 15, 2019, Plaintiff "reported that he worked as a landscaper" and "said his pain was increased with . . . lying down" and "[h]e was advised to maintain normal activity and avoid prolonged bed rest" (Tr. 25 (emphasis added));

- "In April of 2019, a follow-up primary care record showed [Plaintiff] reported he was getting ready to fly to Portland, [Oregon] . . . but there is no indication he mentioned any issues with his musculoskeletal issues for flying" and "rated his pain level as 2 out of 10" (id. (emphasis added));

- "[I]n July of 2019, . . . [h]e reported he continued to work as a landscaper" (id. (emphasis added));

- "On December 31, 2019, [Plaintiff] presented for a new pain management consultation" and complained of "radiating pain to the left buttock, left thigh, left calf, and left foot" but "[h]is exam was essentially within normal limits" (Tr. 26 (emphasis added));

- In March of 2020, Plaintiff "was treated for headache[ and] elevated blood pressure" in the emergency room, "but he had a normal exam" and "[t]here was no complaint

- 17 -

> of back or neck pain, no indication on exam of altered
> gait, display of pain behaviors, or other indications of
> limitations" (id. (emphasis added));

- "Pain management record in May of 2020 showed
  [Plaintiff] reported his pain level as 2-3 out of 10
  with medication[ and] 8-9 out of 10 without" (id.
  (emphasis added));

- "On November 21, 2020, [Plaintiff] underwent left
  [transforaminal epidural steroid injection]" and "[i]n
  December 2020, he reported having 60% pain relief and
  indicated injection was 'still very effective, and he
  was very happy with that'" (Tr. 27 (emphasis added)).

Moreover, by pointing to record evidence Plaintiff believed supported a need to lie down in the RFC (see Doc. 8 at 11-15 (citing Tr. 333, 335, 337-39, 342, 344, 376-80, 385-87, 396, 447, 449-51, 454-56, 476, 480, 489, 492, 501, 525, 532, 635-36, 638-40, 644, 649, 702, 777, 784, 789, 795, 802-03, 902, 907, 1005, 1048-49, 1053-54, 1011, 1168-70, 1180, 1188-1200, 1446)), he misinterprets this court's standard of review. The court must determine whether substantial evidence, i.e., "more than a mere scintilla of evidence but . . . somewhat less than a preponderance," Mastro, 270 F.3d at 176 (brackets and internal quotation marks omitted), supported the ALJ's omission of a need to lie down in the RFC, and not whether other record evidence weighed against that finding, see Lanier v. Colvin, No. CV414-004, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015) (unpublished) ("The fact that [the p]laintiff disagrees with the ALJ's decision, or that there is other evidence in the record

- 18 -

that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence.").

The ALJ's decision thus provides a "logical bridge," Woods, 888 F.3d at 694, connecting the evidence to her conclusion that the exertional and postural restrictions in the RFC adequately accommodated Plaintiff's lumbar impairment, and Plaintiff has not shown a basis for remand.

## IV. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED,** and that this action is **DISMISSED WITH PREJUDICE.**

A Judgment dismissing this action will be filed contemporaneously herewith.

This the 26th day of March, 2024.

_____
United States District Judge

- 19 -

Case 1:22-cv-01054-WO-LPA   Document 11   Filed 03/26/24   Page 19 of 19